AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

FILED
JAN 1 6 2025
Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

United States of America
v.

**CHRISTOPHER RAY BARRETT**

Case No. 25-MJ-22-JFJ

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of December 29, 2024 through January 1, 2025 in the county of Tulsa in the Northern District of Oklahoma, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm after Previous Felony Conviction |
| 18 U.S.C. § 2119(1) | Taking a Vehicle which has been Transported, Shipped, or Received in Interstate Commerce by Force and/or Intimidation |
| 18 U.S.C. § 924(c)(1)(A)(ii) | Brandishing a Firearm in Furtherance of a Federal Crime of Violence |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

SA Sterling Juarez, ATF
*Printed name and title*

Sworn to before me by phone.

Date: 1/16/25

*Judge's signature*

City and state: Tulsa, OK

Jodi F. Jayne, United States Magistrate Judge
*Printed name and title*

## Affidavit in Support of an Arrest Warrant
## in the Northern District of Oklahoma

I, Sterling K. Juarez, being duly sworn under oath, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a Special Agent with the ATF in Tulsa, since July 2017. As a result of my employment with the ATF, my duties include, but are not limited to, the investigation and enforcement of violations of federal alcohol, tobacco, firearms, arson, and explosives laws.

2. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center as well as the ATF Special Agent Basic Training Academy. During these courses of study, I received training in the investigation of federal firearm and explosive violations. I have been a soldier in the National Guard since September 2006, as a Combat Engineer working with U.S., foreign, and improvised explosives. I have a Bachelor of Science degree in Political Science. As an ATF Special Agent, I assist in conducting investigations into the unlawful possession of firearms. Through training, investigations, and experience, I have taken part in cases relating to the trafficking of firearms, the use and possession of firearms by persons prohibited by law, and the possession of illegal firearms. I am familiar with and have participated in various methods of investigations, including, but not limited to: electronic surveillance, physical surveillance, interviewing and general questioning of witnesses, use of confidential informants, use of cooperating

witnesses, use of toll records, and subscribers information. I have also debriefed confidential informants and cooperating witnesses regarding the habits and practices of people engaged in the illegal trafficking of firearms. Furthermore, I have conducted and participated in numerous investigations to include: crime scene investigations, collection of evidence, interviews, and the execution of search warrants.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a arrest warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

4. It is my belief that Christopher Ray Barrett, DOB: xx-xx-1984; SSN xxx-xx-6095, has violated 18 U.S.C. § 922(g)(1) - possession of a firearm after previous felony conviction; 18 U.S.C. § 2119(1) - taking a vehicle which has been transported, shipped, or received in interstate commerce by force and/or intimidation; and 18 U.S.C. § 924(c)(1)(A)(ii) - brandishing a firearm in furtherance of a Federal crime of violence.

5. That on or about December 29, 2024, Barrett stole a vehicle from J.W.K. (the Victim) by threat of force while brandishing a firearm; that Barrett then forced the Victim into another vehicle and transported the Victim to the Victim's house, and that Barrett did all of the preceding after having previously been convicted of a crime punishable by more than a year in prison. These crimes took place in the City of Tulsa, which is within Tulsa County, within the Northern District of Oklahoma.

## PROBABLE CAUSE

6. ATF agents reviewed Tulsa Police Department (TPD) incident and investigative reports which reported the following:

7. According to TPD incident report 2024-068254, on December 31, 2024, TPD received a report of a stolen vehicle from the Victim, who said that he had been held at gunpoint in his car, a 2012 black Volkswagen Passat (OK tag: QIN-421; VIN: 1VWAP7A39CC004758) which had subsequently been stolen from him.

8. On December 29, 2024, the Victim agreed to give a woman he only knew as Lauren a ride from River Spirit Casino to a home at 2937 E 78th ST in Tulsa, Oklahoma, Northern District of Oklahoma. While at the Casino, Lauren spoke with the Victim about the home's owner, Chad, who was currently incarcerated. Lauren said that she also lived at that address and showed the Victim her ID, which listed her address as 2937 E. 78th Street. Lauren asked the Victim to help her retrieve some of her belongings from the house and the Victim agreed. Around 04:00, the two left

the casino and drove to the home. At the home, Lauren loaded some of her belongings from the house into the Victim's Passat. These belongings consisted of bags of clothes and various suitcase bags. The two drove around the Tulsa area for a few hours searching for a place to store Lauren's property.

9. Around 11:00 am, Lauren noticed that she left her wallet and ID at the house. After noticing this, Lauren and the Victim drove back to 2937 E. 78th Street.

10. When they returned to the house, they found a heavily tattooed man and a red-haired woman working on a maroon truck in the driveway. The Victim asked Lauren who the man and women were, and Lauren replied 'SloMo' and his woman. Lauren got out of the car and SloMo jumped into the front seat of the Victim's Passat. Once inside the Passat, SloMo pulled out a silver firearm which he pressed to the Victim's head and Lauren fled from the scene.

11. After placing the firearm to the Victim's head, SloMo told the Victim that "he has one chance to tell him whose stuff is in [the Passat]." The Victim said it was Lauren's property. While continuing to point the firearm at the Victim, SloMo directed him to back his Passat into the home's driveway. SloMo ordered the Victim to unload all the property, including the Victim's property, from the Passat and put it in the house. SloMo said that the property was going to stay at the home until Chad got out of jail.

12. The Victim and two women at the home removed all of the property from the Passat and SloMo ordered the Victim inside the home. Once inside, SloMo removed his shirt and told the Victim that he's "lucky he's not dead." SloMo took the Victim's

phone from him after he noticed the Victim using it. SloMo informed the Victim that his Passat would have to stay at the house. Further, SloMo directed that the Victim would need to talk with Chad, to get the Passat and his property back. SloMo told the Victim to get the phone number of another woman at the house, N., and to call in a few hours. SloMo then drove the Victim to his home in his maroon truck, while the Victim's Passat remained at 2937 E. 78th St.

13. Once they arrived at the Victim's home, SloMo told the Victim to bring him the Passat's title or "there would be problems." The Victim went into the home, retrieved the title, and gave it to SloMo. SloMo then drove away from the Victim's home. On December 31, the Victim reported the Passat as stolen and gave a description of SloMo as a "heavily tatted up white male" to the police.

14. According to supplemental reports, On January 1, 2025, TPD officers found the stolen Passat at a QuikTrip located at 3230 E Admiral PL in Tulsa, Oklahoma, Northern District of Oklahoma. The Passat had a different license plate number; however, they noticed the tag was changed within the last couple days. They ran the previous tag number and found the Victim's stolen vehicle report. Officers confirmed the Passat was the same one from the carjacking by the Passat's VIN number.

15. There were two people and a dog in the Passat. When the passenger entered the QuikTrip, TPD officers moved to detain both people. The driver was subsequently identified as Christopher Ray Barrett and the passenger was identified as G.F.

16. Officers learned that Barrett is a convicted felon with multiple violent felony convictions including Second Degree Murder in Tulsa County CF-2002-810, and Assault with a Dangerous Weapon in Tulsa County CF-2010-810. Further, Barrett matched the physical description of SloMo the Victim gave police when he reported the carjacking.

17. From outside the vehicle, officers spotted the handle of a firearm in plain view wedged between the center console and front passenger seat which they took into evidence. The firearm was a silver Smith & Wesson revolver, model 642 Airweight, caliber .38 SPL, with serial number: CYJ1019. The revolver was loaded with five rounds of ammunition.

18. One of Barrett's friends, C.M., arrived at the QuikTrip to take custody of Barrett's dog. CM told officers at the QuikTrip that Barrett goes by 'SloMo' and "nobody knows him by his given name."

19. The officers read Barrett his Miranda rights, which he verbally waived and agreed to speak to robbery Detectives. Officers transported Barrett and G.F. to TPD Detective Division for an interview.

20. During his interview, Barrett said that the vehicle belonged to his girl, K., who goes by 'Savvy'. Barrett said that the vehicle is a 5-speed manual, which she does not know how to drive. When asked why his girl would own a vehicle which she could not drive, Barrett could not answer. Ultimately, Barrett admitted that Lauren took some property from his home at 2937 E. 78th Street. He admitted that he confronted the Victim in his Passat, telling the Victim to back into the driveway,

giving the Victim a ride home, and getting the title. He told detectives that he was just doing what he was told and that he was told to not let the Victim to leave the house. He said that one of the women told him "Slow your roll, SloMo."

21. In her interview, G.F. denied knowing anything about the firearm and said it did not belong to her. After their interviews, detectives arrested Barrett, and released G.F.

22. Following an examination of the firearm and ammunition seized by the TPD officers, your affiant prepared a report of interstate nexus documenting that they were not manufactured in the State of Oklahoma and must therefore have traveled in or affected interstate or foreign commerce.

23. Further, according to Volkswagen's U.S. media website[1] detailing the history of the Passat model, your affiant learned that Volkswagen manufactured all 2012 and later Passats at their assembly plant in Chattanooga, Tennessee. Volkswagen manufactured all earlier models in Europe. Therefore, the Victim's Passat traveled in or affected interstate or foreign commerce to reach the state of Oklahoma.

## CONCLUSION

Based on the information set forth in this affidavit, I submit there is probable cause to believe that Christopher Ray Barrett has violated 18 U.S.C. § 922(g)(1) Possession of a Firearm after Previous Felony Conviction; 18 U.S.C. § 2119(1)

---

[1] https://media.vw.com/en-us/releases/1337

Taking a Vehicle which has been Transported, Shipped, or Received in Interstate Commerce by Force and/or Intimidation; and 18 U.S.C. § 924(c)(1)(A)(ii), Brandishing a Firearm in Furtherance of a Federal Crime of Violence.

Respectfully submitted,

Sterling K. Juarez
Special Agent
ATF

Subscribed and sworn via phone on the 16th day of January, 2025.

JODI F. JAYNE
UNITED STATES MAGISTRATE JUDGE