IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER RAY BARRETT,<br>a/k/a "SloMo,"<br><br>    Defendant. | Case No. 25-CR-24-SEH-1 |

**Government's Response to Defendant's Motion to Dismiss Count Four**

The Court should deny Barrett's Motion to Dismiss (Dkt. No. 97) because Count Four of the Second Superseding Indictment (Dkt. No. 78) sufficiently informs Barrett of his charge and allows him to prepare a defense, avoid prejudicial surprise at trial, and precludes a second prosecution of the same offense.

**Procedural History**

On January 16, 2024, a federal complaint was filed against Christopher Ray Barrett for Carjacking, Brandishing a Firearm in Furtherance of a Federal Crime of Violence, and Felon in Possession of a Firearm. (Dkt. No. 1). A few weeks later, a grand jury indicted Barrett for those same charges. (Dkt. No. 19).

In June, a different grand jury returned a Superseding Indictment alleging the same three offenses but adding two defendants and a count of Conspiracy to Tamper with a Witness, Victim, and Informant. (Dkt. No. 36). In August, that same grand

jury issued a Second Superseding Indictment alleging the same violations but amending Count Four to Conspiracy to Tamper with Witnesses, Victims, and Informants. (Dkt. No. 78).

## Relevant Facts

On December 29, 2024, Christopher Barrett pointed a gun at a victim, threatened him, and stole his car. The victim, J.K., gave an acquaintance named Lauren a ride to a house on East 78th Street in Tulsa, Oklahoma. Lauren told J.K. that her ex-boyfriend, Chad, had been arrested and people were taking things from the home. Lauren said she needed to retrieve her property from the home before it was stolen. Lauren showed J.K. her ID that listed Chad's address as her home address. Once they arrived, Laruen asked J.K. to go grab cigarettes at a gas station. J.K. left and returned to Chad's home roughly 10-20 minutes later. Lauren had several items packed into bags sitting in front of the front door and a dog she said belonged to her. J.K. helped Lauren load some items from the house into his Passat. J.K. and Lauren left the house and drove around the Tulsa area looking for a place to store her items. Hours later, Lauren told the victim they needed to return to Chad's house because she left her wallet there.

When they returned to Chad's home, Barrett and his girlfriend, Katelin LeBlanc, who goes by "Savvy" or "Savvi," were in the driveway working on a truck. Lauren said "oh shit! It's SloMo." and got out of the Passat. Barrett then sat in the front passenger seat. He pulled out a silver revolver and put it to J.K.'s head. Barrett ordered the victim to back his Passat into the driveway. Once the victim backed into

the driveway, LeBlanc drove Barrett's truck in front of the Passat to block it from leaving. Barrett then took the victim's keys and ordered him to unload everything from the Passat. Lauren left the house and did not return. J.K. removed the items Lauren had taken from the house and his own personal belongings from the Passat into the house. One of Chad's roommates, N.C.S., began to try and sift through the luggage.

While J.K. unloaded the Passat, Chad's friend, A.P., arrived to check on his house. A.P. went inside where J.K. stood in the entryway in shock. While inside the house, Barrett continued pointing the gun at J.K. and pointing the gun at A.P. Barrett told J.K. he was lucky he was not dead. Barrett ordered LeBlanc to take the witnesses' cellphones to prevent them from calling the police. While Barrett further threatened the victim, he explained that he would be keeping the Passat and demanded the title. J.K. told Barrett that he did not have it. Barrett then decided they would go get it. Barrett and LeBlanc drove the victim home in Barrett's truck so that the victim could retrieve the Passat's title. Two days later, after speaking to the victim reported the car as stolen.

On January 1, 2025, Tulsa Police Department Officers found the stolen Passat at a QuikTrip. The Passat's license plate had recently been swapped for a new one. While the Passat was parked in front, a female passenger went inside the QuikTrip, while Barrett remained in the driver's seat. Officers arrested Barrett, searched the Passat and found a silver revolver wedged between the center console and front passenger seat. TPD arrested Barrett, taking him to the station for an interview. Post-

3

*Miranda*, Barrett admitted to directing the victim back the Passat into the driveway and driving the victim to retrieve the title but denied ever possessing a pistol. Additionally, Barrett claimed to be an enrolled member of Kickapoo Tribe of Oklahoma.

On March 19, 2025, The Tulsa County District Attorney's Office dismissed their case, CF-2025-0091, due to Barrett's federal prosecution.

In late April, months after the initial federal Indictment, further investigation, including review of Barrett's jail communications and interviews of witnesses, revealed that Barrett was conspiring with, LeBlanc, and his wife, Jessica Johnson[1] to tamper with witness testimony. Additionally, TPD learned that at least two unknown individuals contacted J.K. to prevent his appearance at any future court proceedings on two separate occasions.

Since his arrest, Barrett's communications with Johnson and LeBlanc reflect that the three attempted to locate and contact J.K. and the other witnesses to threaten, coerce, or intimidate them into recanting or otherwise ensure their unavailability at all future court proceedings.

---

[1] Johnson has been employed as a paralegal and her communications with Barrett indicate that she has accessed various public records including PACER filings and police reports in Barrett's case to identify and locate cooperating witnesses and the victim. Johnson returned to Tulsa from California in March 2025 to personally aid Barrett in locating witnesses. Additionally, Johnson is a certified member of the Irish Mob and Barrett is a certified member of the Hoover Crips.

Examples of pertinent communications demonstrating witness tampering include:

1. In a jail call on January 2, 2025, at 12:02, Johnson spoke with Barrett about a "secondary solution" to have Barrett released from jail. Barrett asked Johnson what the name of the carjacking victim was. Johnson responds, "[she's] finding that out." Barrett told Johnson that he "knows where [the victim] lives." Johnson said she "can't talk on this line" and she "doesn't see any other way to do it as fast as this option would be[.]"

2. In a jail call on January 2, 2025, at 16:59, Johnson told Barrett that the Tulsa Police Department reports does not have "the information [she] needs." Barrett said he will tell Johnson what she needs to know. Johnson said she can't ask him on the jail phone because "they listen like a motherfucker." Johnson said she wants to know who is alleging that Barrett did these things. Barrett told Johnson she needed to send somebody out to talk to the homeowner at the address where the underlying crimes happened.

3. In a video call on January 7, 2025, at 19:16, Barrett asked LeBlanc, "What's up with that dude?" referring to the carjacking victim. LeBlanc replied, "I can't talk to you about it; I got some shit in the works." Barrett then said, "Hey, look, all he got to do is go retract his statement, man." LeBlanc responded, "I KNOW. I'm on top of it, like.... he... you have no idea. You have no idea." Barrett asked, "Is he gonna show up to court?" LeBlanc smiles, shakes her head. LeBlanc again says that she's got this and they "can't talk about it on

this phone." Barrett asked, "So I'm good?" LeBlanc replies "[she's] got this, she's got somebody working on it right now."

4. In a jail call on January 9, 2025, at 9:25, Barrett asked LeBlanc, "What's the dude talking about?" referencing J.K.. LeBlanc says, "He ain't talking about nothing, he don't want nothing to do with it, he's not gonna be coming-- or, showing up for none of it, or nothing, so.... I took care of it." Barrett replied, "If you can, get ahold of that dude and tell him to go to the Public Defender's office and motherfuckin' write a statement saying that he wants to retract all that shit." LeBlanc told Barrett that she already did.

5. On January 19, 2025, at 17:35, Johnson messaged Barrett: "So you have no idea what the guys name is? I thought he signed the title? Do you have any idea where you dropped him off or his sister's name or really the names of anyone involved?" Barrett then sent Johnson a list of all the witnesses' first names who were present at Chad's house.

6. April 2, 2025, at 17:53, Johnson told to Barrett, "I'm coming down there in the am to get those papers then post up in your attorney's office." Johnson then told Barrett "I found the one they haven't been able to and I'm thinking about just having him chill with me so I can bring him with me tomorrow."

7. May 21, 2021, 13:41, Barrett told Johnson "You was supposed to come back to Tulsa, motherfuckin' make sure that fuckin' Savvi and Niki motherfuckin' went and made their fuckin' statements, and motherfuckin' bring it in--and, and, and, and make sure that everything was in a fuckin' row. And, and, and...

6

and shit just went to straight shit whenever you decided to drive across country[.]" Note: in early-March 2025, Johnson drove from California to Oklahoma to assist Barrett and locate/influence witnesses in his case.

8. June 11, 2025, at 20:22, Johnson tells Barrett that she has "accomplished the main objective in coming here to [Oklahoma]" and intends on returning to California.

On August 19, 2025, a federal grand jury returned a Second Superseding Indictment in this case. The Second Superseding Indictment amended Count Four, conspiracy to tamper with witnesses, victims, and informants, in violation of 18 U.S.C. §§ 1512(k) and 1512(b)(1).

## Argument

***Count Four of the Second Superseding Indictment is sufficient under both the Federal Rules of Criminal Procedure and the United States Constitution.***

The Federal Rules of Criminal Procedure require that an indictment be a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[W]here the indictment quotes the language of a statute and includes the date, place, and nature of illegal activity, it need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Powell*, 767 F.3d 1026, 1030 (10th Cir. 2014).

"[A] challenge to the indictment is not a vehicle for testing the government's evidence. Rather, an indictment should be tested solely on the basis of the allegations

made on its face, and such allegations are to be taken as true." *Powell*, 767 F.3d at 1031(*Citing United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008)).

The government provided Barrett with discovery relating to his conspiracy to interfere with witnesses' testimony in case, including summaries of several hundred hours of jail calls, the jail calls themselves, and the witnesses' grand jury transcripts. Additionally, the government anticipates filing a Sealed Bill of Particulars listing the four specific witnesses Barrett targeted – J.K., A.P., N.C.S., and C.T. Barrett is sufficiently aware of who he targeted and his criminal conduct that is the basis of Count Four. Count Four of the Second Superseding Indictment in this case lays out the elements of 1512(k) and 1512(b)(1). That is all the indictment requires. The Court should deny Barrett's Motion to Dismiss Count Four.

***Because Barrett continued to tamper with witnesses after his initial appearance on the federal complaint, he knew he was seeking to obstruct an official federal proceeding.***

The term "official proceeding" refers to federal proceedings. 18 U.S.C. § 1515(a)(1)(A). An official proceeding need not be pending or imminent to trigger the witness-tampering statute. 18 U.S.C. § 1512(f)(1). But the government must prove that an official proceeding was reasonably foreseeable to the defendant. *United States v. Sutton*, 30 F.4th 981, 984 (10th Cir. 2022) (*Citing United States v. Tyler*, 732 F.3d 241, 248–49 (3d Cir. 2013)).

The federal government charged Barrett by complaint on January 16, 2025, roughly two weeks after his state arrest. All tampering after the complaint necessarily contemplated the official federal proceeding. Indeed, in a jail call on January 21,

2025, Barrett told LeBlanc that his case was going federal. Later that same conversation, Barrett asked LeBlanc, what was up with that dude," referring to the victim. LeBlanc responded, "Oh, he's not going, he said he's not going to nothing." In context, Barrett and LeBlanc were discussing the victim's appearance at future federal court proceedings.

***The circumstances show that Barrett conspired to tamper with witnesses in a proceeding that was reasonably likely to be federal, since he claimed to be an Indian.***

"[A] conviction is proper under [1512] if interference with the official proceeding is the natural and probable effect of the defendant's conduct." *U.S. v. Smalls*, 752 F.3d 1227, 1249 (10th Cir. 2014) (citing *United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009)). Further, to convict a defendant for witness tampering under 1512(b)(1), the government must prove that the defendant contemplated a particular official proceeding, and the proceeding was reasonably likely to be federal. *Sutton*, 30 F.4th at 988. The Court should deny Barrett's motion because Barrett's proceeding was reasonably likely to become federal after he claimed to be an enrolled member of a federally recognized tribe.

During his January 1, 2025, interview with Tulsa Police, Barrett claimed to be a member of the Kickapoo tribe of Indians to Tulsa Police Detectives. Barrett's claim implies he knew that the state could not proceed against him if he was an enrolled member of a federally recognized tribe. Because of Barrett's claim and the violent nature of the underlying offense, there was a "reasonable likelihood of federal involvement." *Id*. at 987. Carjacking and felon in possession of a firearm are

9

common federal crimes, and Barrett has significant experience in the criminal justice system.

Barrett contemplated a particular official proceeding when conspiring to tamper with the witnesses in his own case. Given his claims of being an Indian and the potential charges in his case, there was a reasonable likelihood that the official proceedings would become federal. The Court should find that Barrett's statements since his arrest on January 1, 2025, reasonably contemplated an official federal proceeding.

## Conclusion

The Court should deny Barrett's Motion to Dismiss Count Four of the Second Superseding Indictment. Dkt. No. 97. As Count Four sufficiently states the elements of the offense and informs Barrett of his alleged crime. Additionally, the Court should find that there was a reasonable likelihood that Barrett's case would become an official federal proceeding once he claimed to be an enrolled Indian.

Respectfully submitted,

CLINTON J. JOHNSON
UNITED STATES ATTORNEY

/s/ *Mike Flesher*
Mike Flesher, OBA No. 34346
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, OK 74119-1013
918-382-2700

## Certificate of Service

    I hereby certify that on November 17, 2025, I electronically emailed foregoing sealed document to the following attorneys representing the defendants:

Malia Castillo
Chance Cammack
Whitney Mauldin
*Counsels for Christopher Barrett*

                                                */s/ Mike Flesher*
                                                Assistant United States Attorney